IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CAROLYN MELISSA RYAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:20CV671 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Carolyn Melissa Ryan brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying her claim for social security disability insurance benefits and a period of disability. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

In 2016, Plaintiff filed an application for disability insurance benefits and a period of disability alleging a disability onset date of May 31, 2011, later amended to August 19, 2016. (Tr. 15, 40-41, 70, 169.) The application was denied initially and upon reconsideration. (Tr. 15, 100-103, 105-107.) After a hearing (Tr. 33-71), the ALJ concluded in his June 2019 decision that Plaintiff was not disabled under the Act (Tr. 15-27). In May of 2020, the Appeals Council

---

[1] President Joseph R. Biden, Jr. appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (Tr. 1-4.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the relevant sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] The ALJ determined at step one that Plaintiff had not

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this sequence forecloses a disability designation and ends the inquiry. *Id.* at 473.

engaged in substantial gainful activity since the amended alleged onset date of August 19, 2016 through her date last insured of December 31, 2016. (Tr. 18.) He next found the following severe impairments at step two: degenerative disc disease of the cervical spine, degenerative joint disease of the right hand, degenerative joint disease of the knees, diabetes mellitus, asthma, and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (*Id.*) The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC"), concluding that she could perform light work with the following additional limitations:

> occasionally balance, stoop, kneel, crouch and crawl; occasionally climb ramps and stairs; and never climb ladders, ropes or scaffolds. Additionally, the claimant can frequently handle and finger with the right (dominant) upper extremity. The claimant should avoid concentrated exposure to extreme heat or humidity; avoid concentrated exposure to dusts, fumes, gases and other pulmonary irritants; and cannot work in hazardous environments such as at unprotected heights or around moving mechanical parts. The claimant can perform simple, routine and repetitive tasks.

(Tr. 20.) At the fourth step, the ALJ determined that Plaintiff was unable to perform her past relevant work. (Tr. 25.) At step five, the ALJ also determined that there were other jobs in the national economy that Plaintiff could perform. (Tr. 26.)

### IV. ISSUES AND ANALYSIS

Plaintiff's sole argument is that "[t]he ALJ's finding that the Plaintiff can perform light exertion is not supported by substantial evidence because the objective medical evidence, the Plaintiff's testimony, and the reconsideration determination by Disability Determination Services (DDS) support a residual functional capacity of sedentary exertion." (Docket Entry

3

14 at 4-5.) Plaintiff then contends further that light work "require[s] 'frequent' standing and/or walking which means the Plaintiff would have to be on her feet two-thirds of the workday or approximately six hours. The problem with this is that the objective medical evidence, the Plaintiff's testimony, and the reconsideration determination by DDS do not support such a finding." (*Id.* at 5.) As explained below, this is not a persuasive argument.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (e.g., pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner*, 769 F.3d 861, 865 (4th Cir. 2014). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017) (internal quotation marks and citations omitted). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC

4

be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

Here, the ALJ determined that Plaintiff had the RFC to perform a reduced range of light work. (Tr. 20-25.) Light work involves standing and/or walking for a total of around six hours in an eight-hour workday. *See* SSR 83-10, 1983 WL 31251, at *5-6 (1983). In reaching this conclusion, the ALJ considered Plaintiff's subjective complaints, medical records, and the opinion evidence. (Tr. 20-25.) He explained that during the relevant period, the objective evidence showed no significant problems with ambulation, strength, or range of motion, so while he found that Plaintiff could only perform light work and that her pain limited her to only simple, routine, repetitive work, he did not find further limitations warranted. (Tr. 19-25.)

Substantial evidence supports this conclusion. Plaintiff saw one of her treating orthopedists six times during the relevant period, which was about four-and-a-half months long. (Tr. 257-64; *see also* Tr. 23-24 (ALJ citing these records).) At an appointment on August 19, 2016, Plaintiff's orthopedist noted findings of full extension, flexion up to 90 degrees (limited by Plaintiff's calf touching her thigh), mostly medial joint pain, increased varus with weightbearing, possible small effusion, a little bit of patellar crepitation, no lateral joint pain and mostly medial joint pain, and no instability. (Tr. 263.) Imaging showed "some progression" of Plaintiff's arthritis since 2014 which was now "basically bone-on-bone . . . as previously identified [in late 2013]" "along the medial compartment" and "quite a bit of arthritic change about the patellofemoral joints of both knees with large osteophytes." (Tr. 263, 274.) Plaintiff's

5

orthopedist assessed "[e]ndstage osteoarthritis both knees" and noted that Plaintiff wanted "to consider a knee replacement but" should first "lose some weight." (Tr. 263.)

Two months later, Plaintiff's orthopedist started her on a course of five weekly Hyalgan injections in her right knee.³ (Tr. 261.) At the first of those appointments, Plaintiff's orthopedist noted that Plaintiff had range of motion "just shy" of full extension, tenderness, and some patellofemoral crepitation. (*Id*.) At each of the four follow up appointments, Plaintiff's orthopedist recorded that her knee exams were "quite benign," with no reactivity, warmth, or erythema. (Tr. 257-60.)

Other treating providers likewise recorded generally unremarkable findings during the relevant period or soon thereafter. (Tr. 23, 286 (recording that Plaintiff was ambulating normally and only had trace pedal edema and a normal gait and station)); *see also* Tr. 641 (recording that Plaintiff moved all extremities in October of 2016 without noticeable abnormality); Tr. 653 (recording normal range of motion, muscle tone, coordination, and reflexes in January of 2017); Tr. 305 (January 2017 report recording Plaintiff going to the gym and biking three times per week for thirty minutes).) The ALJ also pointed to Plaintiff's function report that indicated she retained the ability to maintain most of her hygiene and personal care needs, prepare meals for herself and her husband, feed herself, wash dishes, go

---

³ *See Shertzer v. Colvin*, No. 3:12-CV-00551, 2013 WL 6449409, at *10 n.27 (M.D. Pa. Dec. 9, 2013) (describing "Hyalgan" as "similar to the fluid that surrounds the joints in [the] body. This fluid acts as a lubricant and shock absorber for the joints") (citation, quotation omitted); *see also Robinson v. Colvin*, No. 5:14-2391- KDW, 2015 WL 5008769, at *9 n.7 (D.S.C. Aug. 20, 2015) ("Viscosupplementation is a treatment for osteoarthritis of the knee that involves injecting a thick fluid called hyaluronate into the knee joint. [I]t is thought that hyaluronate will improve the lubricating properties of the synovial fluid, reduce the pain from osteoarthritis of the knee, improve mobility, and provide a higher and more comfortable level of activity.") (citation, quotation omitted).

to church, drive, visit her mother several times a week, as well as perform some other household cleaning. (Tr. 19, 193-197.)

Plaintiff also underwent a consultative examination during the relevant period. At that examination, Dr. Jankari Ram Setty, M.D., recorded that Plaintiff walked without assistance at her own pace and could climb on and off the exam table and sit on a chair without discomfort. (Tr. 254.) As to her right knee, Dr. Setty recorded tenderness and crepitus, but full range of motion and no swelling. (Tr. 254.) As to her left, Dr. Setty recorded crepitus, but no tenderness and full range of motion. (Tr. 254.) Plaintiff's tandem walk was abnormal, but she had no muscle atrophy. (Tr. 254.) Dr. Setty—who also recorded that Plaintiff's "present illness" had "[n]o impact on activities of daily living"—concluded that Plaintiff had mild limitations in standing and walking and needed no assistive device. (Tr. 253, 255.) The ALJ accorded this opinion significant weight, noting that while it failed to quantify the degree of Plaintiff's limitations, the ALJ was able to extrapolate them from objective medical findings. (Tr. 23-24.)

As noted earlier, Plaintiff claims that the medical evidence, her subjective complaints, and one state agency medical consultant's opinion support a different conclusion. (Docket Entry 14 at 5-12.) In other words, Plaintiff asks the Court to reweigh the record evidence. However, as already discussed, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *See Craig*, 76 F.3d at 589 (district court should defer to the Commissioner's findings if they are legally correct and supported by substantial evidence despite the presence of other, arguably contradictory, evidence in the record); *see also Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)

7

(concluding that "[w]e must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence"). As explained above, there is substantial evidence to support the ALJ's RFC determination and the record does not compel a contrary conclusion.

Plaintiff's arguments to the contrary are not persuasive. While Plaintiff cites medical findings that support that her knee impairment was severe (Docket Entry 14 at 5-8), she ignores the many "quite benign" examination findings that the ALJ relied upon to conclude that she was not as limited as she alleged. (Tr. 257-60, 22-23, 24 (ALJ reasoning that "[t]he generally benign findings on physical examination, as well as the routine and conservative nature of the claimant's treatment support a finding that the claimant is capable of work within the parameters of the restrictive residual functional capacity found herein" and concluding that "the claimant retains the residual functional capacity to perform a less than a full range of work at the light exertional level with additional postural, manipulative and environmental limitations.").) Plaintiff also ignores the ALJ's reliance on Dr. Setty's consultative opinion, which included conclusions that Plaintiff had no more than mild limitations in her ability to stand or walk and needed no assistive device, and which recorded Plaintiff's statement that her impairments did not impact her activities of daily living.[4] (Tr. 253, 255.)

---

[4] At her hearing, Plaintiff testified that she used a walker in 2016. (Tr. 54.) However, in her current brief, Plaintiff concedes that she "was not using a walker in 2016." (Docket Entry 14 at 9-10, n.3.) While there is some evidence that Plaintiff used a walker later around April of 2019, this was not particularly relevant because it occurred years after the relevant period, which ended on December 31, 2016. (Tr. 841) (April 2019 notation explaining "The patient states her symptoms are at the point where she has had to borrow one of her mothers walkers to assist with ambulation. She notes she is forced to use it at night when her symptoms are especially severe. The patient explains she does not use it when she leaves the house because she feels embarrassed to walk around with her husband that

8

Case 1:20-cv-00671-WO-JLW   Document 18   Filed 12/07/21   Page 8 of 11

Plaintiff also relies heavily on her own subjective complaints. (Docket Entry 14 at 8-10.) The ALJ credited some, but not all, of these assertions. Specifically, the ALJ agreed that Plaintiff's knee impairment was severe, and therefore limited her functioning (Tr. 18), but found that Plaintiff's subjective complaints should be partially discounted in light of the rest of the evidence, discussed throughout this Recommendation. (Tr. 21.) *See* 20 C.F.R. §§ 404.1529(c) (stating the ALJ may consider objective medical evidence and other factors when making reasonable conclusions about intensity and persistence of a claimant's symptoms). The ALJ limited Plaintiff to a reduced range of light work, adding a restriction to simple, routine, repetitive work to help account for the pain from her impairments. (Tr. 25.) The ALJ also added postural, manipulative, and environment limitations in the RFC (Tr. 25) to account further for Plaintiff's additional limitations. Consequently, the ALJ did not ignore Plaintiff's subjective allegations, but instead partially credited them while ultimately concluding that Plaintiff could still meet the standing and walking requirements of light work, as long as other restrictions were included. (Tr. 20-25.)

As for the opinion of the non-examining state agency medical consultant on reconsideration, Celeste Williams, M.D., the ALJ explained that he accorded this opinion significant weight, but noted that Dr. Williams's more restrictive standing and walking

---

way. The patient affirms she has tried multiple conservative methods such as steroid injections, anti-inflammatory, and viscosupplementation. She adds she is currently taking diclofenac, and her last injection was a cortisone injection that she received 6 months to 1 year ago.").) Plaintiff asserts that the "ALJ seemed to hinge" his RFC determination of light work on his determination that Plaintiff did not need a walker during the relevant period. (Docket Entry 14 at 9-10 n.3.) However, as demonstrated throughout this Recommendation, the ALJ pointed to a great deal of additional evidence beyond the fact that Plaintiff did not require an assistive device during the relevant period in support of his RFC determination.

limitations conflicted with the objective evidence of record, such as the lack of significant problems with ambulation, strength, and range of motion.[5] (Tr. 84-94, 24-25.) This was appropriate. In considering medical opinions when formulating an RFC assessment, the weight afforded to them depends on a number of factors, including the degree to which the opinion is supported by relevant medical evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(5). The ALJ properly considered those factors here when assessing Dr. Williams's opinion, and substantial evidence supports his determination to discount those portions of it that conflicted with the record as a whole.[6]

Moreover, while the ALJ discounted the portions of Dr. Williams's opinion that conflicted with the record evidence (Tr. 24-25), he included other restrictions identical to those endorsed by Dr. Williams (*compare* Tr. 20 (limiting Plaintiff to occasional balancing and climbing ramps and stairs) *with* Tr. 92 (limiting Plaintiff to occasionally balancing and climbing ramps and stairs)). In addition, with respect to several other limitations Dr. Williams included, the ALJ exceeded those limitations in the RFC he formulated (*compare* Tr. 20 (limiting Plaintiff to no climbing ladders, ropes, or scaffolds; to occasionally stooping, kneeling, crouching, and crawling; and to only simple, routine, repetitive tasks to account for pain) *with* Tr. 92 (limiting

---

[5] Dr. Williams concluded that Plaintiff could only stand/walk two hours a day and was therefore limited to sedentary work. (Tr. 92, 96.)

[6] Looking at Dr. Williams's opinion in the context of the other opinion evidence of record relating to the relevant period is also instructive. Another state agency physician who reviewed the case at the initial stage of the review found Plaintiff capable of medium work (*i.e.*, work with the same walking and standing requirements as light work, but greater lifting and carrying requirements). (Tr. 77-79.) And Dr. Setty, who personally examined Plaintiff during the relevant period, found that Plaintiff had only mild limitations in her ability to stand and walk. (Tr. 255.)

10

Plaintiff to occasionally climbing ladders, ropes, or scaffolds; frequently kneeling, crouching, and crawling; and unlimited stooping)). For all these reasons, the ALJ's RFC determination is supported by substantial evidence and the record does not compel a contrary conclusion.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion to Remand (Docket Entry 13) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

December 7, 2021
Durham, North Carolina